283 A.2d 678.

JULIE CRISOSTOMI *vs.* ZAYRE OF PROVIDENCE, INC.

NOVEMBER 18, 1971.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

PAOLINO, J.   This original petition by an employee for compensation benefits is before us on the employee's appeal from a decree of the full commission of the Workmen's Compensation Commission affirming a decree of the trial commissioner.   After allowing credit for compensation paid pursuant to a nonprejudicial agreement, the trial commissioner ordered the respondent to pay compensation for certain periods during which the employee's medical expert testified she was unable to do her regular work.   Additionally the respondent was ordered to pay all reasonable medical and hospital bills, a fee for the testimony of the employee's medical expert, and a counsel fee for services rendered by the petitioner's counsel at the hearing before the trial commissioner.

The commission's factual findings are not in issue.   On August 25, 1967, petitioner sustained a compensable injury.   Her average weekly wage at that time was $88.40.   The parties entered into a nonprejudicial preliminary agreement pursuant to the provisions of G. L. 1956 (1968 Reenactment) §28-35-8.[1]   The agreement provided that the

---

[1]Section 28-35-8 reads as follows:

"Agreements without prejudice.—If the agreement provides for the payment of compensation for a period not exceeding three (3) months, and such agreement is approved by the director of labor and a copy thereof filed with the clerk of the workmen's compensation commission, the agreement and any action taken pursuant thereto shall be without prejudice to any party thereto to maintain after its expiration any position as to the employer's liability for payments under chapters 29 to 38, inclusive, of this title maintainable in the absence of the agreement."

employer would pay to petitioner compensation at the rate of $45 per week, based on an average weekly wage of $88.40, commencing September 6, 1967, for a period not beyond ninety days from date of incapacity.

Although the nonprejudicial agreement provided for payment of compensation for a period not exceeding ninety days, respondent, through its insurance carrier, continued to pay total compensation of $45 a week to petitioner until April 19, 1969, at which time it suspended any further payment of compensation. As a result of her injury, petitioner was incapacitated for work from September 6, 1967 to June 17, 1968, and from June 28, 1968 to April 19, 1969. She continued to remain totally incapaciated from May 29, 1969 to July 14, 1969 and partially incapacitated from July 14, 1969 to November 1, 1969, when she became able to return to her work on a full-time basis.

On the basis of these findings the trial commissioner ordered respondent to pay to petitioner compensation from May 29, 1969 to November 1, 1969. He noted that because compensation had been paid to petitioner at the rate of $45 per week from the first day of incapacity to April 19, 1969, no order was made for payment of compensation prior to April 19, 1969, since respondent, through its insurance carrier, had already paid to petitioner all that she was entitled to under the Act.

The petitioner based her appeal to the full commission on the ground that the trial commissioner erred in giving respondent credit for the payments made to her between August 27, 1967 and April 19, 1969. The full commission affirmed the decree of the trial commissioner whereupon petitioner filed a claim of appeal to this court. Her reasons of appeal here are identical to those in the appeal to the full commission.

This appeal brings in issue the meaning of §28-35-9 (1968 Reenactment) which deals with cases where an employer

pays compensation without executing a memorandum of agreement.

In urging that the commission erred, petitioner argues that since the nonprejudicial agreement executed by the parties provided for the payment of compensation for a period not exceeding ninety days from the date of incapacity, that when respondent, through its carrier, continued to make payments after the expiration of the ninety days, it was making compensation payments without an agreement and, therefore, was not entitled to credit. The petitioner bases this argument on her interpretation of §28-35-9, which reads as follows:

> "Payment of compensation without agreement.—In the event that an employer or insurer makes payment of compensation to an employee without executing a memorandum of agreement such payment shall constitute an admission that the employee is entitled to compensation under the provisions of chapters 29 to 38, inclusive, of this title and such employer or insurer shall not be entitled to any credit for such payment if the employee is awarded compensation in accordance with the provisions of said chapters."

The commission held that §28-35-9 refers to the payment of compensation without *any* agreement; that the nonprejudicial agreement executed by the parties was an agreement within the meaning of §28-35-9; and that, therefore, the employer, having executed a memorandum of agreement, was not deprived of its entitlement to credit for compensation paid. We agree.

This section was enacted by P. L. 1954, ch. 3297. As the commission correctly pointed out, it was designed to stop a practice which had previously existed whereby some employers, and/or insurance carriers, would make payments of compensation without executing any agreement and then would stop making the payments at their pleasure, thus placing an undue burden upon injured employees.

The legislative intent was clearly to take care of situations where no agreement had been executed by the parties. A nonprejudicial agreement is a preliminary agreement within the meaning of the Workmen's Compensation Act. As the court said in *Gomes* v. *Bristol Manufacturing Corp.*, 94 R. I. 500, 503-04, 182 A.2d 318, 320 (1962):

> "It does not follow that because the agreements of January 12, 1956 were nonprejudicial in character the director was therefore relieved of his obligation to docket them as memoranda of agreements made between an employer and an employee concerning compensation. A nonprejudicial agreement is no less an agreement within the purview of chap. 35 of title 28 because it does not operate to prejudice the parties thereto to take any position as to the liability of the employer after its expiration that they could have taken absent such an agreement. To take such a view of the nature of nonprejudicial agreements is to misconceive the purpose of the act."

The payment made after the expiration of the ninety-day period was merely an extension of payment following the execution of a preliminary agreement rather than the payment of compensation without a preliminary agreement.

The petitioner's challenge to the technical sufficiency of the nonprejudicial agreement on the ground that there is nothing in the record to show whether it was approved by the Director of Labor and filed with the clerk of the commission is not properly before us. This question was not raised before the commission, nor was it a reason of appeal to the full commission or to this court. Under our practice we do not review matters which were not included in the specific reasons of appeal from the decree of the single commissioner to the full commission. *Peloso* v. *Peloso, Inc.*, 107 R. I. 365, 267 A.2d 717 (1970); *Armour and Company* v. *Greco*, 95 R. I. 149, 185 A.2d 98 (1962); *DeFusco* v. *Ochee Spring Water Co.*, 84 R. I. 446, 124 A.2d 867 (1956).

The appeal of the petitioner is denied and dismissed, the decree appealed from is affirmed, and the cause is remanded to the Workmen's Compensation Commission for further proceedings.

*Raul L. Lovett,* for petitioner.

*Keenan, Rice, Dolan & Reardon, H. Eliot Rice,* for respondent.