Leo **FELICIO**

v.

**UNITED WIRE & SUPPLY CORPORATION.**

**No. 83–37–Appeal.**

Supreme Court of Rhode Island.

May 24, 1985.

Raul Lovett, Lovett, Morgera, Schefrin & Gallogly, Ltd., Providence, for petitioner.

Joanne McTiernan, Anderson, Henning & Anderson, Providence, for respondent.

## OPINION

BEVILACQUA, Chief Justice.

This is an appeal by the employee, Leo Felicio, from a decision of the Workers' Compensation Commission granting his original petition in regard as to total and partial incapacity; but terminating his incapacity as of March 5, 1981.

1. The employee was not examined by his own physician, Dr. Eugene Russo, until October 9, 1980. At the hearing before the trial commissioner, he was unable to document his incapacity prior to this date.

2. General Laws 1956 (1979 Reenactment) § 28–35–8 states:
 "**Agreements without prejudice.**—If the agreement provides for the payment of compensation for a period not exceeding three (3)

The employee worked as a pointer for United Wire & Supply Corporation (employer), trimming tubing with a pointing machine. On April 22, 1980, while descending a stairway at work, he slipped on an oily step and fell, injuring his back. He was paid compensation benefits from the date of injury until July 3, 1980, under a non-prejudicial agreement entered into on May 7, 1980.

The trial commissioner found that employee was totally incapacitated from October 9, 1980, until January 22, 1981, and remained partially incapacitated until March 5, 1981.[1]

The commission affirmed the decree of the trial commissioner, and in addition, it credited employer for benefits paid under the nonprejudicial agreement.

The employee raises three issues on appeal: (1) whether the commission erred when it credited employer for benefits paid under the nonprejudicial agreement; (2) the commission erred in finding that employee was not incapacitated after March 5, 1981; and (3) the commission erred in admitting the testimony of Mr. Paul Appolonia when a copy of his testimony had not been provided to employee's counsel pursuant to G.L.1956 (1979 Reenactment) § 28–35–10.

We reverse the commission's decree on the first issue and affirm its decree on issues 2 and 3.

## I

The award of a credit to an employer for benefits paid under a nonprejudicial agreement is not supported by the language of the pertinent statute, § 28–35–8.[2] More-

months, and such agreement is approved by the director of labor and a copy thereof filed with the clerk of the workers' compensation commission, the agreement and any action taken pursuant thereto shall be without prejudice to any party thereto to maintain after its expiration any position as to the employer's liability for payments under chapters 29 to 38, inclusive, of this title maintainable in the absence of the agreement."

over, *Crisostomi v. Zayre of Providence, Inc.*, 109 R.I. 251, 283 A.2d 678 (1971), the principal case cited by employer, does not support the award of a credit on these facts. In *Crisostomi*, the employer was credited for benefits paid to the employee *after* the expiration of a nonprejudicial agreement. This holding is far different from that of the instant case, in which the commission gave employer credit for benefits paid during the term of a nonprejudicial agreement. *Crisostomi* does not support such a credit.

 A credit is in order only when there has been an overlap, as there had been in *Crisostomi*, between benefits paid under a nonprejudicial agreement and benefits ordered after a determination of incapacity. The intent of the policy underpinning the nonprejudicial agreement is to effectuate an orderly, good-faith disposition of compensation claims. The nonprejudicial agreement operates in favor of both worker and employer. It tolls the statute of limitations without generating an admission of liability by the employer. *Gomes v. Bristol Manufacturing Corp.*, 94 R.I. 500, 182 A.2d 318 (1962). These payments are, in effect, gratuitous, and a credit for such payments is appropriate only in a situation in which a subsequent order of compensation overlaps with the nonprejudicial payments.

 In this case, payments were made under the nonprejudicial agreement from April 22, 1980, until July 3, 1980. The award of compensation for demonstrated incapacity commenced October 9, 1980. To award a credit without statutory authorization, or to allow the double-dipping that the Legislature has been vigilantly trying to

prevent, would frustrate the purpose of the nonprejudicial agreement. We therefore reverse the decree of the commission on this issue.

## II

 The employee contends that the commission's finding that partial incapacity ended March 5, 1981, is not supported by the evidence. Our duty is merely to search the record to determine whether there is competent evidence to support the commission's finding. If such evidence is present, we are bound by the commission's determination, absent fraud. *Ignagni v. Davol, Inc.*, 121 R.I. 593, 594, 401 A.2d 1276, 1277 (1979).

The record reveals that this employee's attending physician examined him on March 5, 1981, and concluded that he was able to return to work. Dr. Russo placed several restrictions upon him (no heavy lifting, pushing, or pulling, no repetitive bending), but the testimony of Mr. Nimsyzk, employee's supervisor, indicated that these restrictions would not interfere with his duties as a pipe pointer.

The record reveals that there is sufficient legally competent evidence to support the commission's findings that employee failed to establish that his incapacity continued beyond March 5, 1981.

## III

 The employee also challenges the admission of the testimony of Mr. Paul Appolonia, safety inspector for employer, on the ground that he was not provided with a copy of Mr. Appolonia's testimony in conformity with § 28–35–10.[3]

---

3. Section 28–35–10 states:

"**Duplicates of documents furnished to employee—Inadmissibility of documents when copies not furnished.**—Where an employer, his insurer, or the agents or independent contractors of either obtains from an injured employee any paper, document, report, statement or agreement, including hospital records, nurses' notes, personnel records, reports or statements by foremen or any other

supervisory employees at the injured employee's place of employment, whether signed or unsigned, and regardless of the mode of obtaining same, concerning compensation, such injured employee shall receive an exact duplicate original copy of such paper, document, report, statement or agreement, including hospital records, nurses' notes, personnel records, reports or statements by foremen or any other supervisory employees at the in-

Mr. Appolonia gave oral testimony before the trial commissioner. His testimony had not been reduced to writing. We read § 28–35–10 as governing written statements and materials, not oral statements that have not been reduced to writing. We affirm the commission's ruling on this issue.

The employee's appeal is sustained in part and dismissed in part, and the case is remanded to the Workers' Compensation Commission for further proceedings consistent with this opinion.

jured employee's place of employment which shall be signed by a duly authorized agent or the employer or his insurer. Such paper, document, report, statement or agreement, including hospital records, nurses' notes, personnel records, reports or statements by foremen or any other supervisory employees at the injured employee's place of employment, shall be furnished to the employee at the time the same is obtained, and a copy shall also be furnished to the employee's attorney forthwith upon request by said attorney. If a copy of such paper, document, report, statement or agreement, including hospital records, nurses' notes, personnel records, reports or statements by foremen or any other supervisory employees at the injured employee's place of employment is not furnished strictly in accordance with the provisions of this section, anything therein contained cannot be used by an employer or his insurer or attorney for direct or cross-examination of the employee; and the individual obtaining same may not testify in any proceeding and such paper, document, report, statement or agreement, including hospital records, nurses' notes, personnel records, reports or statements by foremen or any other supervisory employees at the injured employee's place of employment shall be inadmissible in any proceeding, if objection by the employee to its admission is made."